————————o————————

## No. 4199.

### (Court of Appeal, Parish of Orleans.)

### EMILE LEONVAL vs. MRS. ADELE McCALL, WIDOW OF WALTER C. FLOWER.

1. A quotation of prices is not an offer to sell in the sense that a completed contract will arise out of the mere acceptance of the rate offered or the giving of an order for merchandise in accordance with the proposed terms. It requires the acceptance by the one naming the price of the order so named to complete the transaction. Until thus completed there is no mutuality of obligation.

Appeal from Civil District Court, Division "E."

B. R. Forman, for Plaintiff and Appellant.

Fenner, Henderson & Fenner, for Defendant and Appellee.

MOORE, J. This was a suit sounding in damages for the breach of an alleged contract of promise of sale. From a judgment rejecting his demand plaintiff appeals.

The facts are that the defendant, in the proportion of the undivided two-thirds, and her two minor children, in the proportion of the undivided one-sixth each, are the owners of a certain square of ground situated in Covington, in this State. Some time in August, 1905, J. S. Waterman, who resides in New Orleans, and who was defendant's agent, received from B. M. Miller and M. H. White, respectively, both of whom reside in Covington, written inquiries as to whether Waterman could inform them "if Mrs. Flower wishes to sell her square here ...... and if so, what price in cash she will take for it."

Receiving no immediate reply to his letter, Miller wrote again to Waterman on the 29th day of the same month and year, the following letter:

Dear Sir: A few days ago I wrote you inquiring if you knew whether Mrs. Flower wishes to sell her square in Covington, lying between the property of Mr. Soria, the square formerly owned by Mrs. Delano, now occupied by Fisher, and the house of Mrs. Flower. As I did not know your number, I addressed you only to New Orleans. It may be that my letter has not been received. Will you kindly tell me, if you can, whether Mrs. Flower wishes to sell this square? And, if so, at what cash price?"

On the 5th day of September, 1905, Waterman wrote and simultaneously mailed to both Miller and White the following letter in answer to their respective inquiries.

Dear Sir: I am in receipt of a letter from Mrs. Flower, saying she will take $1,800.00 for her vacant square of ground in Covington. This lot is opposite the house occupied by Mrs. Bodenheimer, and lately by Judge King. If you have a purchaser, we will be pleased to hear further from you."

On the 6th day of September, 1905, Miller wrote and mailed to Waterman the following letter:

"Dear Sir: I be gto acknowledge receipt of your favor of yesterday, stating that Mrs. Flower would take $1,800 for her vacant square of ground in Covington, which you describe as being opposite the house lately ocupied by Judge King. My client, Mr. Emile A. Leonval, will take this square at this price, paying cash for the same as soon as good title can be passed. Have you a power of attorney from Mrs. Flower, or will it be necessary to send the deed to her for siganture? I should prefer to have the sale made through you as attorney in fact, if it can be arranged, because, while Mr. Leonval will pay cash, he desires to have a mortgage reserved in the act so that he can use the notes as collateral if he wishes to do so. Such an act as this could be passed only by both parties appearing before the notary, I can draw a power of attorney from Mrs. Flower to you if you desire, and will also prepare the act of sale.

Yours very truly,

B. M. MILLER.

It appears that White, immediately upon the receipt of Waterman's letter of the 6th September instead of writing, took the train for New Orleans and calling upon Waterman early in

the morning of the 7th September concluded a purchase of the property for $1,800 before Waterman had received Miller's letter by mail. On the theory that Waterman's letter of the 5th September constituted an offer to sell and that his (plaintiff's) attorney's letter of the 6th was an acceptance of the offer, binding on all parties from the moment it was deposited in the mail, and that together these writings evidenced a perfect contract of promise of sale, the plaintiff bases his claim for damages which he avers he has sustained as the result of the breach of the contract by defendant.

It is manifest from the terms of Waterman's letter of the 6th September that no proposition was made either to Miller or to White which evinces a design on the part of Waterman to give to either the right of concluding the contract by the mere acceptance on the part of either of the parties to whom the letters were addressed. Nor on the other hand were Miller's letters of the 22nd and 29th August, offers to purchase. Both were merely requests for information as to whether Waterman "knew whether Mrs. Flowers wishes to sell her Covington property ...... and, if so, what price she will take for it." No intimation o rsuggestion is made that Miller, either for himself, or for any other, desired to buy the property and no offer or proposition of any kind is made. At most they are requests for a quotation of price and Waterman's reply gives this information and embodies no proposition.

"If you have a purchaser, we will be pleased to hear further from you," writes Waterman; thereby clearly indicating that further negotiations were necessary to evidence a promise of sale in the event that Miller had a purchaser; and negotiating any idea that the mere announcement of the fact by Miller that he had a purchaser who would take the property at the price quoted to him, was all that was necessary to conclude the contract. One "is bound by his proposition and the signification of his dissent will be of no avail," but only "if the proposition be made in terms, which evince a design to give the other party the right of concluding the contract by his assent......" C. C. Art. 1802.

Here, as we have stated, there was no proposition at all but a mere request for a quotation of price and an answer quoting the price. Repeated decisions both in the Northern Country,

and in this, have affirmed the principal that:

A quotation of prices is not an offer to sell in the sense, that a completed contract will arise out of the mere acceptance of the rate offered or the giving of an order for merchandise in aoccrdance with the proposed terms. It requires the acceptance by the one naming the price of the order so named to complete the transaction. Until thus completed there is no mutuality of obligation." A. & E. Ency. of Law, Vol. 7, P. 138

In Knight vs. Cooley, 34 Iowa, 218 plaintiff wrote defendant enquiring whether he, the defendant was the owner of certain described lots "and if so what was the price of same," to which the plaintiff replied by letter:

"Yours received. The lots are so incumbered it would be difficult to make title at once. Price $1,700 and $1,500 net and cheap."

Thereupon plaintiff replied:

"Dear Sir: Yours of the 18th is at hand. I will take the lots on the terms proposed by you in it, and herewith send you draft for $100 on account of the bargain, The balance of the money is ready, and will be paid immediately on good, clear title being made. I wish you would proceed to have the title made at your earliest convenience."

The defendant returned the draft and declined to sell. On trial in the lower Court the judge thereof instructed the jury that the correspondence of the parties constituted a contract on the part of the defendant to convey the property to plaintiff. On appeal the judgment, which was in favor of plaintiff, was reversed, the Court saying:

"The instruction given by the Court to the jury, to the effect that the correspondence, taking either the statement of plaintiff or defendant as to the contents of plaintiff's first letter, constituted a contract, is erroneous. Defendant's evidence is to the effect that the letter simply inquired if he was the owner of the property, and the price thereof. *It made no proposition to purchase, named no purchaser, and, in fact, contained nothing which could have been so understood.* The answer to this letter simply states a price which defendant regards as "cheap," and the fact that it would be difficult to make a title at once. We do not understand the letter to contain a proposition to sell the

354

lots. The mere statement of the price at which property is held cannot be understood as an offer to sell. The seller may desire to choose the purchaser, and may not be willing to part with his property to anyone who offers his price. We regard the correspondence, taking it as given in defendant's testimony, so far as it goes, as amounting, on defendant's part simply to a negotiation, and not to a binding offer. It required the acceptance by him of the offer contained in plaintiff's last letter to create a binding contract."

In the case of Harvey vs. Facey-Appeal cases, 1893, plaintiff wrote defendant as follows: "Will you sell us Bumper Hall Pan. Telegraph us lowest cash price. Answer paid." To which defendant wired reply: "Lowest price for Bumper Hall Pan nine hundred pounds." Thereupon plaintiff wired back: "We agree to buy Bumper Hall Pan for the sum of nine hundred pounds asked by you. Please send us your title deed, in order that we may get early possession."

The defendant declined to convey the property and suit was brought for damages for breach of contract. The case received final decision by the House of Lords, plaintiff's suit being rejected. Their Lordships, speaking through Lord Morris, said *inter alia* ...... the contract could only be completed if Facey had accepted the appellant's last telegram ...... their Lordships are of opinion that the mere statement of the lowest price at which the vendor would sell contains no implied contract to sell at that price to the persons making the inquiry."

For these reasons the judgment appealed from which rejected plaintiff's demand is affirmed.

May 20th, 1907.

Rehearing refused June 21, 1907.

Writ denied by Supreme Court August 12, 1907.